JUDGE NATHAN

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>IDRIS D. MUSTAPHA<br><br>                              Defendant. | 16-CV-____ (__)<br><br>**16 CV 4805** |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges as follows:

## SUMMARY

1.      This case concerns a fraudulent scheme in which Idris Dayo Mustapha, a citizen of the United Kingdom, hacked numerous brokerage accounts of unwitting U.S. investors, including at least one New York City investor, and placed unauthorized trades in their accounts in the stock of several publicly traded companies during at least April and May 2016.  Mustapha then profitably traded in those same securities through his own brokerage account, generally in the minutes before or after he traded in the accounts of innocent victims.

2.      For example, on May 17, 2016, Mustapha caused a victim to purchase the stock of a public company at increasing prices through the victim's hacked brokerage account, and Mustapha then coordinated his own trading in order to sell other shares of that same stock at a profit in his own brokerage account.  Mustapha accessed his brokerage account to make the May 17, 2016 trades with the same computing device that he used to hack into the victim's account to make unauthorized trades on the same day.

3.      During April and May 2016, Mustapha made profits of at least $68,000 when he sold shares of the same stock that he caused the hijacked accounts to purchase.  The account holders he victimized collectively lost more approximately $289,000 during the same time period.

4.      Between March 2016 and May 2016, Mustapha transferred approximately $100,000 out of his brokerage account to a bank account in his name.  Mustapha also has sought to withdraw the approximate $100,000 cash balance currently in his brokerage account.

5.      As a result of the conduct alleged herein, Mustapha violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 340.10b-5].

6.      The Commission seeks emergency preliminary relief, including a temporary restraining order against further violations of the federal securities laws and an emergency asset freeze to preserve assets necessary to satisfy any eventual judgment against Mustapha.  The Commission also requests an immediate accounting, expedited discovery, a repatriation order, and an evidence preservation order to facilitate the prompt resolution of this matter on the merits.

7.      The Commission also seeks a permanent injunction against Mustapha, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest, civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and such other relief as the Court may deem appropriate.

2

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

9.     Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions and courses of business alleged in this Complaint, including trades in securities listed on the New York Stock Exchange, occurred within the Southern District of New York, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails.  In addition, Mustapha accessed certain brokerage accounts through an order management system managed by a computer software company based in the Southern District of New York.  At least one of Mustapha's victims resides in the Southern District of New York.

## DEFENDANT

10.     Idris Dayo Mustapha, ("Mustapha"), age 30, is a citizen of the United Kingdom and holds a United Kingdom passport.  Mustapha opened a brokerage account in his name on or about February 26, 2016 at a United States-based brokerage firm (the "Executing Broker").  The securities Mustapha received after purchasing stock, and the money he received for selling stock were "cleared," or held, by another United States-based brokerage firm (the "Clearing Broker").

## RELATED PARTIES AND BACKGROUND

11.     The Clearing Broker is registered with the Commission and its principal offices are located in Stamford, Connecticut.

12.     Mustapha's Executing Broker is registered with the Commission and its principal

3

offices are located in San Diego, California.

13.     Mustapha electronically accessed his account at his Executing Broker through an order management system (the "Platform") managed by a computer software company based in New York.

14.     Several of Mustapha's victims have brokerage accounts with a firm registered with the Commission and based in East Brunswick, New Jersey (the "New Jersey Broker").  The New Jersey Broker, like Mustapha's Executing Broker, clears its trades through the Clearing Broker.  "Clearing" is the procedure by which the Clearing Broker processes and completes the purchase and sale of securities.

15.     At least two other brokerage firms, which are not based in the United States, and at which Mustapha's other victims have or had accounts, used the Platform to allow customers to access their online accounts.

## FACTS

16.     On or about February 26, 2016, Mustapha opened a brokerage account with the Executing Broker.

17.     On or about March 3, 2016, Mustapha deposited approximately $32,000 into his brokerage account.  Mustapha transferred the money from a United States-based bank account in his name.

### April 2016 Account Intrusions

18.     On or about April 18 and 19, 2016, Mustapha, acting alone or in concert with others, hacked into the brokerage accounts of five customers of the New Jersey Broker (the "April Victims") and caused unauthorized trades to be placed in the April Victims' accounts.  Passwords to the April Victims' accounts had been reset on or about April 18 and 19, 2016,

through unauthorized access to an administrative user's account.

19.     On the same days, Mustapha purchased and sold shares of the same securities as the April Victims in his own brokerage account.  Mustapha accessed his own brokerage account through a device whose internet protocol ("IP") address and MAC Address (unique computer identifier) matched the IP address and MAC Address he had used on several previous occasions.

20.     Mustapha knowingly caused unauthorized trading activity in the April Victims' accounts that corresponded with his own trading activity.

21.     On April 18, 2016, Mustapha purchased and sold shares of Regulus Therapeutics Inc. ("RGLS") in his own brokerage account and, acting alone or in concert with others, caused April Victim No. 1 to purchase and sell RGLS shares.  First, Mustapha caused April Victim No. 1 to purchase RGLS shares in April Victim No. 1's account at the New Jersey Broker.  Mustapha then sold RGLS shares in his own account.  Mustapha also caused April Victim No. 1's account to sell shares of RGLS that day.  April Victim No. 1 had not previously purchased or sold RGLS securities and did not authorize the trades in April Victim No. 1's account.

22.     On April 18, 2016, Mustapha purchased and sold shares of Yirendai Ltd. Sponsored ADR ("YRD"), Cnova N.V. Shares ("CNV"), and/or K12 Inc. ("LRN") in his own brokerage account and, acting alone or in concern with others, caused April Victims No. 1, 2, 3, and 4 to purchase and sell YRD, CNV, and/or LRN shares in their respective brokerage accounts.  April Victims No. 1, 2, 3, and 4 had not previously purchased or sold these securities and did not authorize these trades in their accounts.

23.     On April 19, 2016, Mustapha purchased shares of Applied Optoelectronics, Inc. ("AAOI") in his own account before he, acting alone or in concert with others, caused April Victim No. 5 to purchase AAOI shares in April Victim No. 5's account at the New Jersey

Broker. Mustapha then sold AAOI shares in his own account on the same day. April Victim No. 5 had not previously purchased or sold AAOI securities and did not authorize the trades in April Victim No. 5's account.

May 2016 Account Intrusions

24.     In or about May 2016, Mustapha, acting alone or in concert with others, hacked into the brokerage accounts of at least four additional unwitting United States-based account holders (the "May Victims"), who held brokerage accounts at foreign brokerage firms. These foreign brokerage firms used the Platform to give their customers, including the May Victims, electronic access to their accounts.

25.     On various dates in May 2016, Mustapha, acting alone or in concert with others, caused May Victims No. 1, 2, and 3 to purchase and sell securities of various public companies that traded in United States' markets, including, but not necessarily limited to, Aurus Medical Holding AG ("EARS"), Attunity Ltd. ("ATTU"), The Chefs' Warehouse, Inc. ("CHEF"), Aerie Pharmaceuticals, Inc. ("AERI"), Archrock Partners, L.P. ("APLP"), and L.B. Foster Company ("FSTR"). May Victims No. 1, 2, and 3 did not authorize these trades in their accounts. Mustapha traded in the shares of each of these companies on the same dates that he caused May Victims No. 1, 2, and 3 to trade in them.

26.     On May 17, 2016, Mustapha caused May Victim No. 4, who had not traded any securities in his account for several months, to purchase shares of Lawson Products, Inc. ("LAWS") at prices per share that increased during the course of the purchases. After causing May Victim No. 4 to purchase LAWS stock, Mustapha sold LAWS short (i.e., sold stock that he did not yet own; short-selling a stock is, in effect, a bet that the stock's price will decrease) at these higher prices. Then, Mustapha caused May Victim No. 4's account to sell LAWS stock

6

until the stock price decreased to approximately its original value. At or around that time, Mustapha began purchasing LAWS stock (to cover his short position) at the lower prices. Mustapha made profits from the difference between the price at which he sold LAWS short and the price at which he subsequently purchased LAWS shares.

27.     Specifically, at approximately 1:33:26 p.m. ET to 1:34:49 p.m. ET, Mustapha caused May Victim No. 4 to purchase LAWS shares at prices that increased from as low as $18.99 per share to a high of $19.49 per share. During that period of trading, the unauthorized trading in the May Victim No. 4 account comprised approximately 13,779 shares of the approximately 14,379 LAWS shares traded at that time. At or about that time, Mustapha sold short at least 4,200 shares of LAWS stock at $19.49 per share in his own account. Within minutes, Mustapha caused May Victim No. 4's account to sell LAWS stock as the price declined to as low as approximately $18.71 per share. Then, about one minute later, Mustapha purchased LAWS stock at approximately $18.75 per share in his own account, which allowed him to profit by purchasing LAWS stock at a lower price per share than the price per share at which he sold LAWS stock short.

28.     The trading volume in LAWS stock on May 17 increased dramatically from an average daily trading volume that month of approximately 14,000 shares to more than 170,000 shares. Mustapha caused May Victim No. 4 to trade more than 120,000 shares of LAWS that day. Through his own brokerage account, Mustapha purchased and sold, or short sold, approximately 22,532 shares of LAWS that day.

29.     On May 17, 2016, Mustapha accessed the account of May Victim No. 4 with a MAC address identical to the MAC address associated with the device Mustapha used to access his own brokerage account on several prior occasions in 2016. In addition, Mustapha accessed

the account of May Victim No. 4 on May 17, 2016 with an IP address that was an "anonymizer," or an anonymous proxy tool, to mask his true originating IP address.

30.     Mustapha received approximately $12,000 as a result of the LAWS trading, and May Victim No. 1 lost approximately $48,000 in account value as a result of that trading.

31.     As a result of the conduct described herein, Mustapha defrauded each of the April Victims and May Victims by causing the unauthorized purchase and sale of securities in their account.

32.     Mustapha's unauthorized trading in April and May 2016 negatively affected the victimized accounts.  Mustapha caused the victimized accounts to purchase more than $5 million (aggregate) of publicly traded stock, and the victims realized aggregate losses of more than $200,000.

33.     In addition, between March 2016 and May 2016, Mustapha transferred more than $100,000 from his brokerage account to a bank account in his own name.

34.     The current cash balance in Mustapha's brokerage account at the Clearing Broker is approximately $100,000.

### FIRST CLAIM FOR RELIEF
### FRAUD IN THE OFFER OR SALE OF SECURITIES
### (Violations of Section 17(a)(1) and (3) of the Securities Act)

35.     Paragraphs 1 through 34 are re-alleged and incorporated by reference.

36.     By reason of the conduct described above, Mustapha, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting with the requisite degree of knowledge or state of mind (i) employed devices, schemes, or artifices to defraud; and (ii) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons,

including purchasers or sellers of the securities.

37.     By reason of the conduct described above, Mustapha violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
#### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder)

38.     Paragraphs 1 through 34 are re-alleged and incorporated by reference.

39.     By reason of the conduct described above, Mustapha, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; and (ii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

40.     By reason of the conduct described above, Mustapha violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.     Temporarily, preliminarily, and permanently restrain and enjoin Mustapha, his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

B.     Order Mustapha to disgorge, with prejudgment interest, all ill-gotten gains

obtained by reason of the unlawful conduct alleged in this Complaint;

      C.     Order Mustapha to pay civil monetary penalties pursuant to Section 20(d)

of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15

U.S.C. § 78u(d)(3)]; and

      D.     Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.


DATED this 22nd day of June, 2016.


                    Respectfully submitted,

                    _David Stoelting_ (signature)

                    David Stoelting
                    Eric A. Forni*
                    Susan Cooke Anderson*
                    Martin F. Healey*

                    U.S. Securities and Exchange Commission
                    Boston Regional Office
                    33 Arch Street, 24th Floor
                    Boston, MA  02110
                    (617) 573-8827 (Forni)
                    ForniE@sec.gov

                    *Not admitted in the S.D.N.Y.